**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 1:07cv273**

| | |
|---|---|
| **DONNA M. KIRSCHNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Summary Judgment [Doc. 9], filed January 3, 2008, and the Defendant's

Motion for Summary Judgment [Doc. 11], filed February 6, 2008.

## PROCEDURAL HISTORY

The Plaintiff filed applications for social security disability and

supplemental security income benefits on April 16, 2004 and May 17, 2004

alleging the onset of disability as of January 25, 2004.  [Tr. 21, 59-61, 353].

Her claim was denied initially and on reconsideration, resulting in the

1

Plaintiff's request for a hearing which was held on September 18, 2006. [Id., at 21, 43-53]. On December 14, 2006, Charles F. Biscoe, Administrative Law Judge issued his decision finding that the Plaintiff was not disabled as defined in the Social Security Act. [Tr. 21-27].

The Plaintiff requested review of the decision by the Social Security Appeals Council on February 26, 2007. [Tr. 16]. The Appeals Council denied the request for review on June 8, 2007. [Tr. 6]. On August 3, 2007, the Plaintiff timely filed her Complaint in this Court seeking review of that determination. [Doc. 1].

## STANDARD OF REVIEW

This Court does not conduct a *de novo* review of the decision of the Administrative Law Judge (ALJ) denying Social Security benefits to the Plaintiff. In fact, under the statutory scheme of the Social Security Act, the reviewing court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (*superseded by statute on other grounds*); 42 U.S.C. §405(g) (1988); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006)

("Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that the ultimate conclusions are legally correct.") (citation omitted). Substantial evidence is defined as that which "a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id.; Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "In reviewing for substantial evidence [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001), *quoting* Craig, supra.; Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992), *citing* Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) ("It is not our place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence."). Thus, the issue for resolution here "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

## THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  Id.  Second, the applicant must show a severe impairment.  If the applicant does not show any impairment or combination thereof which significantly limits the physical or mental ability to perform work activities, then no severe impairment is shown and the applicant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the applicant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot

perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fifth step.

## FACTS AS STATED IN THE RECORD

The Plaintiff testified at her hearing about her education and work experience, her symptoms and pain and her ability to perform daily life activities.[1] At the time of the final ruling, the Plaintiff was forty-six years old. [Tr. ]. She had failed to graduate from high school and had been unable to pass the GED test on two occasions. [Tr. 393]. The Plaintiff's past relevant work was as a self-employed housekeeper cleaning ten houses per week. [Tr. 394]. Prior to 1999, she had been a cook in a medium sized restaurant. [Id.]. She last worked in January 2004 with an unsuccessful work attempt in March 2004. [Tr. 407]. She reported her

---

[1]At the hearing, the Plaintiff handed to the ALJ as an exhibit a diary that she had kept since her injury in an automobile accident which she alleged resulted in her disability. Those hand-written notes are included in the Administrative Record and encompass one hundred fifty-four (154) pages. [Tr. 108-262].

disability as stemming from low back and right leg pain which began after she was involved in an automobile accident in January 2004. [Tr. 396].

The Plaintiff described her daily life activities as including the ability to drive short distances twice a week to the grocery store, post office and doctors' appointments. [Tr. 396]. When walking, however, the Plaintiff used a cane and while shopping, she used a scooter. [Tr. 399]. She was able to cook by doing so while seated on a stool. [Tr. 400]. Her daughter helped her clean her house and her son-in-law took care of the yard. [Id.]. Her activities included dusting, watching television, crocheting and reading. [Id.]. She was able to attend to her personal hygiene. [Tr. 403]. The Plaintiff testified that her sleep pattern was interrupted by pain and she slept only two to six hours per night. [Id.]. In describing her pain, the Plaintiff reported it as eight on a scale of one to ten. [Tr. 404]. She testified that she is unable to walk more than five minutes, stand more than ten minutes and was unable to lift, stoop or twist. [Tr. 405-406].

On January 25, 2004, the Plaintiff's car was struck from the rear by another vehicle. [Tr. 264]. She reported to the emergency room physician that her pain was at a level five out of ten in the back of her head with diffuse pain in her neck. [Id.]. Cat scans of her head and spine were both

normal.  [Tr. 265].  Her diagnosis was cervical strain and closed head injury.  [Id.].

The Plaintiff testified that a week after the accident, she saw her family physician, Dr. Edward Perez. [Tr. 401].  He referred her to a chiropractor and she saw two different chiropractors with no relief. [Id.]. During the hearing, the Plaintiff admitted that from an objective standpoint, her injuries from the accident were minor. [Tr. 406].  At the time of the hearing, the Plaintiff took Ibuprofen and Soma for her pain.  [Tr. 408].

She was referred for x-rays and an MRI in February.  The Plaintiff's family physician noted that she received physical therapy in February 2004 and that by March 17, 2004 "her symptoms were noted with this treatment protocol to be approximately 90%" improved. [Tr. 349].

On May 12, 2004, the Plaintiff was seen at the Watauga Medical Center for pain in her right hip and leg for which she was given a lumbar epidural. [Tr. 275].  The Plaintiff reported that since the accident in January 2004, she had been treated by a chiropractor and physical therapist. [Tr. 281].  She described her pain as aching, shooting, sharp and stabbing. [Id.].  The lumbar epidural procedure was repeated on May 24, 2004.  [Tr. 269].

The Plaintiff was seen by Dr. Jeffrey Crittenden, a neurologist, on June 24, 2004 complaining of back and leg pain. [Tr. 285]. It was noted that she had not responded to physical therapy, steroids, three epidural injections or pain medication and had been unable to work since the car accident. [Id.]. Dr. Crittenden recorded a prominent right leg limp. [Id.]. His review of the February 2004 MRI showed mild central disc bulges at L5/S1. [Id.]. In his final assessment, Dr. Crittenden wrote:

> I do not think this patient has clinical or radiology evidence of a lumbar radiculopathy or other nerve injury. Clear functional overlay is present on exam. I think she would have been expected to have improved by now with the treatments she has had. I do not feel that she has a neurologic source for her pain and would not suggest any further neurologic workup.

[Tr. 286].

He did not prescribe any pain medication. [Id.].

The day before Dr. Crittenden saw the Plaintiff, her chiropractor, Dr. Roger Heschong, completed a report after reviewing the same MRI. [Tr. 303]. In his opinion, the MRI revealed "a broad-based disc bulge at L-5[.]" [Id.]. He also noted that weight bearing x-rays "revealed abnormal structural deviations." [Tr. 304]. Dr. Heschong stated that his treatment of the Plaintiff had "revolved around the fixation/inflammatory lesion of the right sacroiliac joint and lower thoracic spine. [Id.]. Despite a variety of

8

treatments, nothing had provided relief to her. [Id.]. Dr. Heschong found the Plaintiff unable to lift over ten pounds, stand or walk for more than five minutes, carry or handle objects repetitively, or sit for more than one hour. [Id.].

The Plaintiff was seen on July 14, 2004 by Dr. Wesley Fowler of Mountain Neurological Center for low back, right hip and right leg pain. [Tr. 290]. The Plaintiff reported that her pain was exacerbated by standing, sitting or walking and was "not made better by anything." [Id.]. Dr. Fowler reviewed the MRI of the Plaintiff's lumbar spine and found normal alignment, with no severe central or foraminal stenosis at any level. [Id.]. He did not detect any fracture or malalignment. [Id.]. During testing of the Plaintiff's quadriceps, she initially stated that she could not move them at all; but, with encouragement, she was able to give full power. [Tr. 291]. Dr. Fowler opined:

> I had a long discussion with Ms. Kirschner today. ... Her MRI does not show any compressive lesion to my viewing. I do not see any surgery to perform to help her with her pain syndrome. When this was discussed with the patient, she got quite frustrated and upset as well as angry. I did offer for her to undergo a second opinion, either within this office or outside of this office. I also discussed with her that it is possible that she might have intrinsic right hip pathology. I offered to refer her for an MRI of the right hip. She was not interested in this. I did refer her to Dr. Margaret Burke from

physiatry[2] for a nonsurgical approach to her pain syndrome. [Id.].

The Plaintiff was seen the next day, July 15, 2004, by Dr. Burke. [Tr. 287]. The Plaintiff reported that her worst pain was in her right hip and is particularly bad when she lies on her back or uses a vacuum. [Id.]. Dr. Burke diagnosed an acute right sacroiliac strain. [Tr. 288]. Because the Plaintiff's right leg was longer than her left, Dr. Burke provided her with a "small heel lift to place in the left shoe" which "gave her immediate comfort." [Id.]. She also provided samples of Celebrex and Flexeril. [Id.]. The Plaintiff was to return if needed. [Id.].

On November 6, 2004, the Plaintiff's chiropractor, Dr. Roger Heschong, noted that despite treatment from many different sources, the Plaintiff had not obtained relief from her pain. [Tr. 302]. His examinations of her had revealed objective findings of muscle spasm of the right paravertebral musculature and right buttock muscles. [Id.]. Dr. Heschong also reported edema in the right sacroiliac joint. [Id.]. He opined that she was "unable to perform any duties that require standing, bending, stooping,

---

[2]Rehabilitative medicine. Dorland's Illustrated Medical Dictionary (31st ed.).

lifting or walking. Her ability to sit for long periods of time have been dramatically decreased as well. It appears these limitations are permanent." [Id.].

On November 18, 2004, the Plaintiff's personal physician, Dr. Edward Perez, opined that mild changes of degenerative disc disease and osteoarthritis in her lumbosacral junction had rendered her unable to work "on a long term basis." [Tr. 294]. He referred to the radiology report of Dr. Richard Geldmeier who had concluded in February 2004 that the Plaintiff had mild degenerative disc disease and osteoarthritis at the lumbosacral junction but no evidence of significant focal disc protrusion. [Tr. 297].

On February 19, 2005, the Plaintiff's chiropractor, Dr. Roger Heschong, provided the Plaintiff with an excuse to be removed from jury duty.

> Ms. Donna Kirschner has a permanent impairment of her lower back. It may be that there is a free floating fragment of cartilage in her right sacroiliac joint. At this time, she is unable to perform any duties that require standing, bending, stooping, lifting or walking. Her ability to sit for long periods of time have [sic] been dramatically decreased as well. It appears these limitations are permanent.

[Tr. 301].

In September 2006, Dr. Heschong released the Plaintiff from his treatment "because of a total lack of progress." [Tr. 348]. In his opinion,

she had suffered a soft tissue injury which could not be healed because she was unable to tolerate the exercises which would have strengthened the tissue. [Id.].

In 2004, when the Plaintiff was forty-four years old, she had a psychological evaluation conducted at New River Behavioral. [Tr. 346-47, 408]. The examiner opined that the Plaintiff was motivated to perform well during the administration of the test but became anxious about completing tasks. [Tr. 346]. He reported that "During the latter part of the administration, Ms. Kirshner appeared less motivated and noted that she was hungry and ready to be done with the test." [Id.]. She had a full scale intelligence quotient (IQ) of 71, a performance scale of 70 and a verbal scale of 72. [Tr. 347]. The examiner opined that she would have difficulty with tasks involving visual motor coordination, visual discrimination and scanning and speed of mental operation. [Id.]. She was also found to have below average word knowledge, scoring below most people her age as to general information. [Id.]. She was diagnosed with Borderline Intellectual Functioning. [Id.].

A residual functional capacity evaluation was performed in August 2004 by Dr. William Farley. [Tr. 337-345]. Dr. Farley concluded that the

Plaintiff could perform medium work with occasional stooping, crouching and kneeling. [Id.].

When the Plaintiff requested reconsideration of the ALJ's decision, she included an incomplete report from Dr. Boatright. [Tr. 372-387]. He noted that after physical therapy in February 2004, the Plaintiff was released to resume her activities of daily life and work. [Tr. 377]. At the time of his evaluation in September 2006, the Plaintiff reported "no disability with respect to self-care or life support activities such as eating, sleeping, breathing, or activities of daily living such as taking a shower, driving or getting dressed." [Tr. 381]. He noted multiple evaluations by treating and other physicians "as well as my own consistently conclude that there is no clear neurologic cause for the symptoms that occur in her right lower extremity in a neurologic pattern. This does not mean that she does not have pain in this area. The imaging studies that I have reviewed fail to reveal the cause for this pain that she has consistently reported." [Tr. 385].

## THE ALJ'S DECISION

In applying the five step sequential evaluation process, the ALJ first noted that the Plaintiff has not been engaged in substantial gainful activity

since the alleged onset date of her disability. [Tr. 23].  He concluded at the second step that she has two medically severe impairments: mild lumbar spine disc disease and borderline intellectual functioning.  [Id.].  At the third step, however, he found that these impairments, considered alone and in combination, did not meet or equal the level of severity listed in the Social Security regulations for a finding of disability.[3] [Tr. 24].   Considering step four of the sequential evaluation process, the ALJ found that the Plaintiff could not return to her past relevant work as a housekeeper or cook. [Tr. 26].  He then proceeded to the final step to consider whether her residual functional capacity, age, education and past work experience enable the performance of other work.  [Tr. 27].  The ALJ found that the Plaintiff was able to perform a limited range of light work, "light work with non-complex duties.  She can lift or carry 10 to 20 lbs., stand[,] walk or sit 6 hours a day each."  [Tr. 24, 27].

The ALJ found that the Plaintiff had the severe impairment of borderline intellectual functioning but concluded nonetheless that her "scores appear to understate her actual intelligence because during testing she became less motivated and was impatient to complete it." [Tr. 26].  He

---

[3]The ALJ's decision mistakenly listed this as the fourth step. [Tr. 24].

also found that her earnings record and lifestyle did not comport with borderline intellectual functions. [Id.].

## DISCUSSION

The Plaintiff's first assignment of error relates to the ALJ's handling of her mental impairment.

At the second sequential step, the ALJ acknowledged that the Plaintiff had the severe impairment of borderline intellectual functioning and stated he would provide "[a] more detailed PRT[4] analysis [] at Step 3." [Tr. 23]. The ALJ, however, did not provide the analysis. The Defendant admits that the ALJ did not follow the technique specified in 20 C.F.R. §404.1520(a) but argues it is harmless error because the ALJ conceded that the Plaintiff has a severe mental impairment.

> While the Rules and Regulations of the Social Security Administration once required an ALJ to append a copy of the Psychiatric Review Technique form to his or her decision when evaluating mental impairments, this requirement was changed in August 2000. Under the current regulations, *an ALJ is only required to discuss the criteria identified in 20 C.R.F. [§404.1520a]*.

Collier v. Commissioner of Social Sec., 108 Fed.Appx. 358 **4 (6th Cir.

---

[4]Psychiatric review technique. Mullins v. Sullivan, 775 F.Supp. 198 (W.D.Va. 1991).

2004) (emphasis provided); <u>Moore v. Barnhart</u>, 405 F.3d 1208 (11th Cir.

2005) (ALJ's failure to complete PRT form *or to incorporate its mode of*

*analysis into decision is error*); <u>Guyton v. Apfel</u>, 20 F.Supp.2d 156, 165

(D.Mass. 1998) (current regulations do not require completion of the PRT

*but do require that the decision document application of the special*

*technique*).

20 C.F.R. §404.1520a provides a "special technique" for the

evaluation of mental impairments. "When a claimant alleges disability due

to a mental condition, the Commissioner **must** follow a special technique

set forth in 20 C.F.R. §404.1520a and the Listing of Impairments[.]" <u>Waters</u>

<u>v. Astrue</u>, 495 F.Supp.2d 512, 515 (D.Md. 2007) (emphasis in original).

First, the ALJ is to evaluate the symptoms, signs and laboratory findings to

determine whether the claimant has a medically determinable mental

impairment. 20 C.F.R. §404.1520a(b). Here, the ALJ found that the

Plaintiff had a severe mental impairment. The regulation thus required that

the ALJ then document the symptoms, signs and laboratory findings which

substantiate his finding. <u>Id</u>.; <u>Wilson v. Astrue</u>, 2008 WL 2019650 **9

(E.D.N.C. 2008) ("If the ALJ determines that a claimant has medically

determinable mental impairments, he must 'specify the symptoms, signs,

and laboratory findings that substantiate the presence of the impairment."). In this case, the ALJ merely referred to the psychological evaluation which reported the Plaintiff's IQ scales.

The next step of the "special technique" requires the ALJ to rate the degree of functional limitation resulting from the mental impairment in four functional areas: daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §404.1520a(c)(3). The ALJ is obligated to rate the degrees of limitation in the first three areas by using a five point scale: none, mild, moderate, marked and extreme. 20 C.F.R. §404.1520a(c)(4). As to the last area, he is obligated to use a scale consisting of: "none," "one or two," "three," or "four or more." Id. The sole comment made by the ALJ in this regard was to report that the psychologist "opine[d] that she does best on tasks that require non-verbal reasoning ability and visual recognition of abstract patterns." [Tr. 26].

> The ALJ failed to document [] whether he applied the technique set forth in 20 C.F.R. §404.1520a. There was no discussion in the text of the decision documenting the application of the technique and/or the ALJ's own specific findings as to the degree of limitation in **each** of the four areas of functioning described in paragraph (c) of 404.1520a: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.

Waters, 495 F.Supp.2d at 515-16 (emphasis in original).

"[T]he regulations require the application of the special technique at each level of the administrative review process when a claimant has a[] [] mental impairment." Wilson, 2008 WL 2019650 at *9. "However, [the ALJ's] decision does not reference the 'special technique' or any of the four functional areas." Id. As a result, "this Court cannot conclude that the ALJ analyzed all relevant evidence, and thus cannot conclude that the ALJ's decision is supported by substantial evidence." Id.; Moore, 405 F.3d at 1213-14 ("The ALJ is required to incorporate the results of this technique into the findings and conclusions."). "Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [the Plaintiff's residual functional capacity], [this Court] cannot even evaluate the Commissioner's contention that the ALJ's error was harmless." Id. In addition, because the ALJ failed to incorporate into his decision the relevant results, this Court cannot evaluate whether his consideration of the impairments in combination was legally correct. Wilson, 2008 WL 2019650 at **2 (ALJ concluded the claimant had two severe impairments, spine disease and borderline intellectual functioning but failed to follow technique, thus his conclusion that neither individually or in combination resulted in disability could not be reviewed). In addition, the

ALJ failed to examine the possibility that the Plaintiff's borderline intellectual functioning aggravated her perception of pain, which was her primary complaint.  Montgomery v. Shalala, 30 F.3d 98, 100 (8ᵗʰ Cir. 1994); Selassie v.Barnhart, 203 Fed.Appx. 174, 176 (9ᵗʰ Cir. 2006) (failure to document special technique constitutes legal error because "[t]he specific documentation requirements [] are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements.").  As a result, the undersigned concludes that this legal error requires remand.

Although this omission alone requires remand, the Court will address the Plaintiff's allegation that the ALJ failed to evaluate properly her subjective allegations of pain.  The ALJ concluded at the fifth step that the Plaintiff has the residual functional capacity to perform light work with non-complex duties. [Tr. 24].  After reaching this conclusion, he commented:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]
>
> ...
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

19

The claimant's subjective symptoms have been carefully considered. She takes routine medications, such as ibuprofen 600,[5] which may be expected to substantially relieve her back and leg pain. She has no significant credible side effects. ... She appears to be fully invested in her accident claims and has kept an elaborate diary and written statements. She has incredibly denied any relief from various treatment modalities.

[Tr. 24-26].

In the Fourth Circuit,

[o]nce an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.

Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006) (citations omitted).

Here, the ALJ wrote, "the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" [Tr. 24].

[T]he claimant [] contends that the Secretary improperly evaluated [her] complaint pain. [The Court] agree[s]. The ALJ concluded that the claimant's subjective complaints of pain and allegations of disability were not corroborated by the preponderance of the medical evidence as to the severity and frequency of [her] symptoms and limitations. [The Fourth Circuit] has held that pain itself can be

---

[5] At the time of the hearing, however, the Plaintiff also took Soma, a muscle relaxer. [Tr. 408].

disabling, and it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function.  Further, *while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.*

Hines, 453 F.3d at 564 (quoting Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (emphasis in original).

In this case, it appears that the ALJ reversed the order of the evaluation by concluding that the evidence of pain was inconsistent with objective medical evidence of a condition that could cause such pain.  Moreover, he appears to have required objective evidence of the pain itself.

The evidence is clear that the Plaintiff had a physical impairment that could reasonably be expected to cause pain and that the impairment was shown by medically objective evidence.  Indeed, both treating and examining physicians opined that she had an unresolved soft tissue injury. [Dr. Heschong, soft tissue injury, Tr. 304; Dr. Fowler, right hip pathology, Tr. 291; Dr. Burke, acute right sacroiiliac strain, Tr. 293; Dr. Heschong, muscle spasms and edema, Tr. 302; Dr. Perez, degenerative disc disease and osteoarthritic, Tr. 294; Dr. Heschong, free floating cartilage fragment in soft tissue, Tr. 301, 348; Dr. Boatright, lack of neurological injury does not mean that she does not have pain, Tr. 385].

> If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (*i.e.*, manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. *Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.*

Hines, 453 F.3d at 564-65 (emphasis provided).

The ALJ appears to have improperly applied the Fourth Circuit standard for the evaluation of pain. Since the case must be remanded in any event, a more thorough evaluation should be provided. In view of the remand, the Court does not address the Plaintiff's other assignments of error but she is not precluded from raising such issues on remand.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for
Summary Judgment [Doc. 9] is hereby **GRANTED** and this matter is hereby
**REMANDED** for further proceedings in accordance with this decision.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary
Judgment [Doc. 11] is hereby **DENIED**.

The Clerk of Court is instructed that this ruling closes this action.

Signed: August 18, 2008

Martin Reidinger
United States District Judge